FILED

Mel M. Marin          February 15, 2017          2017 FEB 22 PM 4: 33
Box 34991
Los Angeles, CA   90034

Plaintiff
*Pro Se*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SACV17-00316 JVS (SSx)

MEL M. MARIN          )          Number _____

Plaintiff,          )

v.          )

          )          COMPLAINT FOR
          )          DECLARATORY JUDGMENT
UNITED HEALTH OF          )          AND FOR DAMAGES FOR
CALIFORNIA,          )          BANKRUPTCY CONTEMPT
5701 Katella Ave.          )          AND
Cypress, CA   90630          )          FOR EMOTIONAL DISTRESS
and          )
HEALTH NET INC.,          )
21650 Oxnard St.          )          JURY DEMANDED
Los Angeles, CA   91367          )
          )
Defendants.          )

## JURISDICTION

### Subject Matter Jurisdiction

1.     This is an action for violation of the bankruptcy stay by the defendants providing and denying health coverage to Jordana Bauman during two different bankruptcies from 2011 to 2016, for multiple violations of the bankruptcy stay that hurt this plaintiff.

2.     Therefore, this is a federally-based claim under 28 U.S.C. § 1331.

3.     Venue is proper because the defendants' offices are in this district and plaintiff lives here, but is not domiciled in California.

**Personal  Jurisdiction**

4.     This court has jurisdiction to remedy because plaintiff is a creditor of the debtor and the violations of creditor -defendants named herein hurt plaintiff, under the rule in In re Goodman, 991 F.2d 613, 620 (9th Cir.1993)(creditor has standing to assert contempt action for violation of the stay).

**Direction By Bankruptcy Judge To Prosecute Elsewhere**

5.     The contempt and related claims were not pursued in the bankruptcy court because that court directed the parties to go to other courts to prosecute those claims, as in Piatt v. McDougall, 773 F.2d 1032, 1035 [5] (9th Cir. 1985)(court declining to take jurisdiction is not *res judicata* even if it had the ability to do so).

6.     Because these claims were part of the debtor's bankruptcy estate and the bankruptcy trustee did not abandon them, neither debtor nor plaintiff could pursue them until the bankruptcy dismissal on February 1, 2017 created an abandonment by statute, and no statutes of limitation ran during the period of the bankruptcy stay, under the rule in Marin v. Utica, 140 F'Appx 304 (2nd Cir.  2005) (debtor's son cannot sue the creditor for harm to his father or himself in Arizona because the bankruptcy trustee alone has that power to sue while the bankruptcy is open).

7.     That abandonment by dismissal on February 1, 2017 permitted this action under the rule in In re  Fingers, 170  B.R. 419, 425 (S.D. Cal. 1994)(suit for violation of automatic stay may be brought "(1) after bankruptcy proceedings have terminated; and (2) in the district court rather than the bankruptcy court"), and In re Davis, 177 B.R. 907, 911 (B.A.P. 9th Cir. 1995) ("the dismissal of a bankruptcy case does not render moot an action for damages based on a willful violation of the automatic stay during the pendency of the bankruptcy case") and In re Pocklington, 21 B.R. 199, 203 (Bankr. S.D. Cal. 1982) (if the bankruptcy court dismisses the bankruptcy, adversary actions started by someone other than the

debtor still survive).

8.     And the injured party must include non-bankruptcy causes of action against that defendant-creditor in the same contempt action, according to MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F. 3d 910, 914 (9th Cir. 1996)(state claim that arose because of bankruptcy action cannot be brought in state court).

**Providential  Jurisdiction  (Injury)**

9.     From the period of May 22, 1972 to August 16, 1972 plaintiff worked as a laborer on construction of the property of debtor but was not paid for it.  That work established a lien on the property that never expires under the California Constitution, art. XIV, § 3 which provides as follows: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished".   He also made multiple filings in her prior bankruptcies in an effort to try to protect that property and claim, which had the effect of adding to his lien based on his hours.

10.     That lien alone made plaintiff a creditor in the bankruptcy action of debtor under the rule in In re Popp, 323 B.R. 260, 269 (B.A.P. 9th Cir.  2005).

11.     Plaintiff was harmed because his claims were "side-lined" and not paid although they were listed and provided-for in a proposed Chapter 13 Plan, while the debtor was forced by these defendants to pay them during the stay, in violation of federal law.  Also, one property on which plaintiff held a lien was taken by foreclosure during the prior bankruptcy because the threats and continuing collection actions by these defendants forced debtor to pay their unsecured monthly demands and not her mortgages.

12.     Specifically, because the debtor was forced to pay these defendants' monthly premiums of about $1,000 for five years during the bankruptcy stay to stay alive when the bankruptcy stay made that payment illegal, and was also

forced to pay an additional $1,000 a month in medical costs that the defendants had a duty to pay under the insurance contracts but refused to pay, it prevented the debtor from including in her proposed Chapter 13 Plan payment of monthly mortgage costs to the mortgagee of debtor's principal property, resulting in the loss of that $2 million house.

13.    So the defendants' violations were the proximate cause of the loss of the house on which plaintiff held his lien.

14.    Additionally, because the debtor is this plaintiff's sister, and because the debtor was disabled during all the years of the bankruptcy actions, her condition was fragile and the stress of the loss of her home caused her serious emotional distress and repeated medical emergencies including a stroke, paralysis, extended hospitalization and near-death that hurt this plaintiff and created a severe emotional distress that required medical treatments for the plaintiff himself on May 27, 2015, June 1, 2015, June 3, 2015, June 10, 2015, June 11, 2015, July 8, 2015, July 10, 2015, July 16, 2015, July 18, 2015, July 29, 2015, August 6, 2015, August 10, 2015, August 12, 2015, August 17, 2015, August 18, 2015, August 19, 2015, August 24, 2015, August 26, 2015, August 27, 2015, August 31, 2015, September 9, 2015, September 16, 2015, September 30, 2015, October 5, 2015, October 7, 2015, October 7, 2015, October 26, 2015, November 2, November 4, November 9, November 11, November 16, November 23, and November 30, 2015.

15.    Therefore, plaintiff has standing to sue the defendants for his own emotional distress for their violations of the stay that also caused the loss of debtor's property, under the rule in Thing v. LaChusa, 48 Cal.3d 644, 663-664 (1989)(family member may sue for emotional distress over the threat of harm).

- 4 -

## I.

## FIRST CAUSE OF ACTION

## FOR DAMAGES FOR VIOLATION OF THE BANKRUPTCY STAY

## AGAINST BOTH DEFENDANTS

16.    Debtor acquired her health insurance plans as "group plans" through her husband's employment as a teacher on about June 15, 1989.

17.    Despite her multiple requests for the terms and manuals for both of these plans, they failed and refused to send her any information about them and told her orally over the phone only when they called to seek payments, that she was covered over a 30 year period by one of the defendants half the time and by the other defendant half the time, at different times.   But they refused to provide better details.

18.    Additionally, this plaintiff also made demands for information from the defendants, in writing, informing them that their refusals to provide care and their demands for payments were illegal and causing her serious distress and concerning this plaintiff.  They ignored those as well.

19.    Therefore, she was not apprised of changes in the plans proposed by her husband and by the defendants until they refused to pay medical providers and she was not allowed to object, and was not allowed to go back to her original providers once they were refused payment by these defendants.

20.    In about 1997 the debtor was injured in a car accident caused by her husband and it left her disabled for the rest of her life.   Her husband then deserted her.  In Family Court proceedings husband moved to take away all of her medical health coverage and property, so she could not possibly provide for herself with her disability, and she was not entitled to federal or state welfare or social security or medicare because her husband "opted-out" of it for both of them in order to take a pension benefit he sought years earlier.   She moved to a separate residence.

21.    The Family Court allowed husband who is an attorney to pay for a separate lawyer for the divorce, but did not direct husband to pay for an attorney for debtor.

22.    To avoid the loss of her property and health coverage and facing death without it, she filed for bankruptcy under Chapter 13 on about July 3, 2011, under the allowance of In re Melcher, BAP No. NC-05-1343, 2006 Bankr. LEXIS 4854, at *18 [5] (B.A.P. 9th Cir. May 31, 2006)(bankruptcy filed for the purpose of avoiding consequences of a Family Court order disposing of property allowed because "it is sometimes legitimate to use chapter 11 to deal with . . . two party disputes in the family law arena").

23.    Defendants were given notice of that bankruptcy by the clerk on about July 15, 2011, and by the debtor every other month after she received bills for premiums and called to tell them again that she was a debtor and should not have to pay anything during the bankruptcy because of In re Minoco Group of Companies, Ltd., 799 F.2d 517, 519 (9th Cir. 1986)(cancellation of any insurance policy after filing of a bankruptcy for nonpayments is automatically stayed by Section 362(a)).

24.    Despite this, the defendants threatened to cut-off her benefits if she did not pay on time every month.  To avoid the loss of benefits and death, she paid until the Family Court judge issued an order of alimony that included payment of the health insurance monthly bill by her husband.

25.    However, because that bankruptcy and alimony order interfered with husband's plans to take the marital property and cut-off debtor, on about October 3, 2011, husband asked or allowed the defendants (and still during the bankruptcy),  to change the terms of the health coverage to remove benefits to debtor, to force debtor to use her alimony money for extra medical care that defendants would not continue to provide so debtor could not use that money to fund her Chapter 13 Plan.

- 6 -

26. On about January 1, 2012, therefore, the defendants then changed the terms of the health coverage to decrease the benefits to help husband effectively "starve her" and cause the loss of her home to get rid of her.

27. As a result, debtor had to make-up for the lost benefits by using $1,000 a month of the alimony money to pay for missing medical benefits, and special food to continue to function and could not dedicate any of it to mortgage payments in her Chapter 13 Plan.

28. The result was that the bankruptcy judge dismissed the bankruptcy because the plan as defective, and the mortgagee seized and sold debtor's marital property valued at $2 million on which this plaintiff had a construction lien.

29. Debtor re-filed another Chapter 13 bankruptcy which gave the right to prosecute those contempt causes of action as pre-petition causes of action, to the bankruptcy trustee. Therefore, no statutes of limitation ran on those claims because neither debtor nor brother were allowed to pursue the actions.

30. However, the trustee failed to prosecute those claims and disregarded the requests of debtor and brother for the trustee to abandon those claims so they could proceed independently.

31. Because the last bankruptcy was dismissed against the debtor on February 1, 2017, the plaintiff is now allowed to prosecute his claims against these defendants.

32. Plaintiff was injured by the loss of his lien on the property of his sister, and also by the forced payments of debtor to the defendants when debtor could have been paying plaintiff in the course of a proposed plan as a secured creditor rather than unsecured claimants who were these defendants.

33. The continuing "dunning" notices to debtor that violated the bankruptcy stay because no judge authorized them, and that effectively included the threat of death was the substantial or proximate cause of debtor's inability to devote that money to payments in the proposed Chapter 13 Plan and, therefore, for

-7-

the loss of the bankruptcy stay and of the property on which this plaintiff held his lien.

34. These continued threats to ensure monthly payments constituted illegal collection actions over the period of 2012 to 2017, similar to other illegal collection actions against other debtors for which federal courts have awarded $4,000 a week in damages for contempt violations alone, separate from any actual losses, as in In re International Forex of California, Inc., 247 B.R. 284, 286, 292 (Bankr. S.D. Cal. 2000)($4,000 a week for contempt).

35. Because of inflation, that fine is now equal to $8,000 a week in 2017 dollars, entitling a jury to award $416,000 against each defendant for each year of their continued violation of the bankruptcy stay from 2012 to 2017.

36. Additionally, the repeated nature of the violations makes it very clear that the defendants knew they were violating the federal law and continued to do it because they could "get away with it" since debtor would not complain because they would cut-her-off and kill her if she did. Therefore, a jury may award a punitive amount for that violation separate from any other award, according to In re Stanton, 303 F.3d 939, 941 [3](9th Cir. 2002) (violations of the stay are serious business, and bankruptcy court may award punitive damages and sanctions for contempt for post-petition acts without approval of the bankruptcy court).

37. WHEREFORE, brother seeks and is entitled to $1 million against each defendant for the base fine for violation of the bankruptcy stay, another $2 million for the loss of debtor's home on which plaintiff had a lien, and another $10 million in punitive damages against each defendant for malice.

## II.

## SECOND CAUSE OF ACTION

## FOR DAMAGES FOR EMOTIONAL DISTRESS

## AGAINST EACH DEFENDANT

38.   All prior allegations are incorporated herein by this reference.

39.   A person may recover damages for intentional infliction of emotional distress if he suffers severe emotional injury caused by the defendant's outrageous conduct absent any privilege with the intent to cause, or with reckless disregard of the probability of causing, emotional distress, according to Huntingdon Life Sciences v. Stop Huntingdon Animal Cruelty USA, 129 Cal. App. 4th 1228 (2005).

40.   A family member may sue for emotional distress caused to him by the same outrageous conduct of the defendants, according to Thing v. LaChusa, 48 Cal.3d 644, 663-664 (1989)(family member may sue for emotional distress over the threat of harm).

41.   The conduct of these defendants was without any privilege because it was illegal and they knew at the time it was illegal.

42.   It was outrageous *per se* because it was illegal, and it was outrageous additionally, because their creditor status alone made it outrageous when they knew what they do will affect their debtor adversely, as in Bundren v. Superior Court, 145 Cal. App. 3d 784 (1983).

43.   Additionally, they knew at the time they took the illegal acts that they were affecting this plaintiff because he is the debtor's family-member and he sent letters to them saying so, and demonstrating his distress.

44.   They did, in fact, cause severe emotional distress to this plaintiff.

45.   And they caused plaintiff to devote full time to his sister's bankruptcies from 2013 to 2017, to try to avoid the damage or reverse the damage

caused by these defendants.

46.   Their conduct was reckless and deliberate: deliberate in their attack on sister to hurt her to force payment, with reckless disregard as to whether they were hurting this plaintiff or ruining debtor's financial future by sabotage of her bankruptcies.

47.   Their deliberate illegal collection actions were a substantial and proximate cause of plaintiff's emotional distress that forced him to seek medical help, and that forced him to devote full time to the bankruptcies that would not have been necessary but for the deliberate and malicious threats of these defendants.

48.   However, it is not necessary that plaintiff prove the losses he sustained and his sister sustained were caused solely by one or more of these defendants to prevail here.  A jury may find that even if other factors were partly to blame for the dismissal of the bankruptcies and loss of plaintiff's property, the jury may still make a full award against each defendant if their conduct was a substantial cause of the damage, under Scirex Corp. v. Federal Ins. Co., 313 F.3d 841, 849-50 (3d Cir. 2002)(the direct cause of a loss "does not have to be the sole cause or immediate cause" of plaintiff's loss for him to prevail, "but need only be a proximate or substantial cause" of the loss to allow a damages award).

49.   WHEREFORE, brother seeks and is entitled to an award against each defendant of $100,000 for pain and suffering, another $500,000 for the loss of the opportunity of meaningful employment plaintiff could have taken for five years if not being forced to attend to this illegal attack on his sister and her home, and another  $10 million in punitive damages.

40.   The allegations contained herein are verified.

DATED:   February 15, 2017                          _____
                                                                            Plaintiff

- 10 -